## MARYLAND CASUALTY COMPANY v. SALLIE M. HUDGINS.

### No. 1246.   Decided November 16, 1903.

**1.—Accident Insurance—Exception in Policy—Death by Poison.**

Upon an accident insurance policy providing, "This insurance does not cover * * * injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled," there can be no recovery for death of insured, caused by eating spoiled oysters. (Pp. 126-130.)

**2.—Pleading—Answer.**

An answer in confession and avoidance is taken and construed in connection with the allegations of the petition, which it need not repeat. (Pp. 127, 128.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Bowie County.

Sallie M. Hudgins sued the Maryland Casualty Company and recovered judgment. Defendant appealed, and on affirmance obtained writ of error.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin*, for plaintiff in error.—The Court of Civil Appeals erred in holding that the voluntary act of eating an unsound oyster, not known to be so, falls within the terms of an accident policy insuring against death resulting from "external, violent and accidental means," and excluding "injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled." Ermentrout v. Insurance Co., 30 Law. Rep. Ann., 346; Foster v. Insurance Co., 40 Law. Rep. Ann., 833; Travelers Ins. Co. v. Myers, 49 Law. Rep. Ann., 760; Western Com. Trav. Assn. v. Smith, 85 Fed. Rep., 401; Woodmans Acc. Assn. v. Byers, 55 Law. Rep. Ann., 291; Scheiderer v. Travelers Ins. Co., 46 Am. Rep., 618; O'Reilly v. Mutual Life Ins. Co., 19 Am. Rep., 151; Peabody v. Satterlee, 166 N. Y., 174; McGlother v. Mutual Acc.

Ins. Assn., 89 Fed. Rep., 685; Pollock v. U. S. Mutual Assn., 102 Pa. St., 234; Westmoreland v. Preferred Acc. Ins. Co., 75 Fed. Rep., 245.

The Court of Civil Appeals erred in holding that it was necessary for appellant to plead the exemption providing that the policy should not cover injuries resulting from poison or anything otherwise taken; and erred in holding that appellant, having pleaded that the oysters contained ptomaine poison, which caused the death, was confined to the matter pleaded, and could not be heard to contend that death resulted from the taking of something else than such poison, though contained in the exemptions of the policy, and proven by the plaintiff in developing her case.  Westmoreland v. Accident Ins. Co., 75 Fed. Rep., 245.

*Sheppard, Jones & Sheppard,* for defendant in error.—The evidence adduced on the trial of this cause in the court below, showing that the death of insured was caused by the fact that he ate unsound and spoiled oysters when he thought he was eating good and sound oysters, brought said death within the terms of the policy herein sued upon, and the court did not err in overruling defendant's demurrer and in refusing to instruct the jury to find for defendant as requested by its counsel. 1 Am. and Eng. Enc. of Law, 249; Carnes v. Iowa Trav. Men's Assn., 76 N. W. Rep., 683; Supreme Coun. Chosen Friends v. Garrigus, 3 N. E. Rep., 822; Association v. Barry, 131 U. S., 100; Western Com. Trav. Assn. v. Smith, 85 Fed. Rep., 401; Atlanta Acc. Assn. v. Alexander, 30 S. E. Rep., 939.

If the cause of the injury or death can be shown to be due to accidental means it follows that such injury or death is due to external and violent means. 1 Cyc. of Law and Proc., 248; Paul v. Travelers Ins. Co., 20 N. E. Rep., 347, which disapproves Hill v. Insurance Co., 22 Hun, 187; Bacon v. U. S. Mut. Acc. Assn., 25 N. E. Rep., 399; Healey v. Mutual Acc. Assn., 25 N. E. Rep., 52; 1 Am. and Eng. Enc. of Law, 294-5; Miller v. Fidelity and Cas. Co., 97 Fed. Rep., 836; Atlanta Acc. Assn. v. Alexander, 30 S. E. Rep., 939; Western Com. Trav. Assn. v. Smith, 85 Fed. Rep., 401.

If disease is produced by accident and death results from the disease, the death is accidental. Standard Life and Acc. Assn. v. Thomas, 17 S. W. Rep., 275; Atlanta Acc. Assn. v. Alexander, 30 S. E. Rep., 939; Travelers Assn. v. Smith, 85 Fed. Rep., 401.

A stipulation in an accident policy excluding liability for "injuries, fatal or otherwise, resulting from poison or anything accidentally, or otherwise, taken, administered, absorbed, or inhaled," uses the words "taken, administered, absorbed or inhaled" in a medicinal, surgical, or remedial sense; refers to anything taken, administered, absorbed or inhaled for the purposes of remedy, or relief of pain; and does not apply to food eaten in the ordinary sustenance of everyday life. Miller v. Fidelity and C. Co., 97 Fed. Rep., 836; Paul v. Travelers Ins. Co., 20 N. E. Rep., 347; Menneidey v. Assurance Corp., 148 N. Y., 597.

In a policy excluding liability for "injuries resulting from poison or

anything accidentally or otherwise taken, administered, absorbed or inhaled," the words "or anything" refer exclusively to the preceding word "poison," and are used to extend its meaning and to indicate and embrace everything of a poisonous nature. This clause does not therefore apply to the unsound oysters in this case, because they were clearly shown to contain no poison whatever. Kasten v. Interstate Cas. Co., 74 N. W. Rep., 534.

BROWN, Associate Justice.—On October 6, 1900, the Maryland Casualty Company, a foreign corporation doing business in Texas on a permit from the State, issued and delivered to William T. Hudgins a policy of accident insurance which contained these stipulations: "The Maryland Casualty Company, Baltimore, Md., hereinafter called the company, does hereby insure Wm. T. Hudgins, of Texarkana, in the county of Bowie, and State of Texas, hereinafter called the assured, by occupation a lawyer, classified by the company as A "spl," for the term of twelve months, beginning on the 6th day of October, 1900, at twelve o'clock noon, and ending on the 6th day of October, 1901, noon, standard time, in the amount of five hundred dollars, principal sum, and $25 weekly indemnity, against bodily injury, sustained through external, violent and accidental means, as follows: First. If death shall result from any such injury, independent of all other causes, within ninety days from the happening of the accident causing such injury, the company will pay the principal sum above specified to Mrs. Sallie N. Hudgins, wife of the assured, if surviving, otherwise to the legal representatives of the assured. * * * This insurance does not cover * * * injuries fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled."

Mrs. Sallie N. Hudgins, the beneficiary in the said policy, instituted suit in the District Court of Bowie County, and by appropriate allegations set up the making and delivering of the policy, her right to maintain the suit, and the death of William T. Hudgins, alleging the facts in connection with the said death and the causes which brought it about, as follows: "That while said policy was in full force and effect according to the face and reading thereof, to wit, on October 28, 1900, the said Wm. T. Hudgins did receive a bodily injury through external, violent and accidental means, from which, independently of all other causes, the said Wm. T. Hudgins died on November 1, 1900; that the nature and character of said accident to the said Wm. T. Hudgins and the injury arising therefrom and causing his death were as follows: That on October 28, 1900, the said Wm. T. Hudgins ordered, among other things for his dinner, some raw oysters; that some of said oysters were unsound and spoiled; that the said Wm. T. Hudgins accidentally ate one or two of said oysters, and soon thereafter discovered that they were unsound and spoiled; that at the time he ate them he did not know that they were unsound and spoiled; that had he known that said oysters were unsound and spoiled before he ate them he would not have eaten

them; that as soon as he detected their unsound and spoiled condition he quit eating them; that a few hours after he had eaten said unsound and spoiled oysters, his stomach began to cramp him and pains seized him in his bowels and stomach; that he became sick at his stomach, vomited, and passed bloody mucus actions from his bowels; that said unsound and spoiled oysters had passed into his intestines and inflamed his bowels to such an extent that they were obstructed and prevented from performing the functions essential to the maintenance and sustenance of life; that he steadily and rapidly grew worse until he died on November 1, 1900, from the effects of eating said unsound and spoiled oysters accidentally, and from the effects of said unsound and spoiled oysters lodging in his intestines accidentally, the one or both of said accidents being the proximate cause of his death."

Defendant answered by a general demurrer, by special exceptions, and a general denial, and specially pleaded as follows: "And for further answer defendant says that said policy contains a stipulation that said policy does not cover injuries fatal or otherwise resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled; and that if said unsound or spoiled oysters caused the death of said Wm. T. Hudgins, it was because said spoiled oysters contained ptomaine poison and that therefore defendant is not liable, and plaintiff ought not to recover, and of this it puts itself upon the country." The evidence established the allegations of the petition as to the manner of Hudgins' death, but the facts need not be repeated.

Upon a trial before a jury, after the evidence was introduced, the defendant in the court below filed the following demurrer to the evidence and motion for instruction: "Now comes the defendant, by Webber & Webber and Dan T. Leary, its attorneys, and says the evidence offered herein and introduced by the plaintiff fails to show any right for plaintiff to recover herein, and defendant demurs to the evidence of plaintiff and says the same is not sufficient to entitle plaintiff to a judgment. Wherefore the defendant prays that the court instruct the jury to return a verdict in favor of the defendant." The court refused the request to instruct the jury to find for the defendant and proceeded with the trial submitting the issue to the jury, and verdict was rendered for the plaintiff for the amount of the policy with interest thereon, which judgment was by the Court of Civil Appeals affirmed.

The Court of Civil Appeals held that the answer specially set up that the deceased died from ptomaine poison, and under such answer the defense that the oysters were voluntarily taken into the stomach and death ensued therefrom was not admissible. The answer of the defendant set up the clause excepting from liability death or injury arising from poison or anything taken, etc., and alleged, that if the oysters taken or swallowed by the deceased caused his death, then it was because the said oysters contained "ptomaine poison." The word "because" marks the means by which death was produced and not the reason why the defendant is not liable; but the answer continues: "and there-

fore the defendant is not liable," etc., which refers to all of the facts set up in the answer as constituting a defense to the plaintiff's claim. Plaintiff's petition contains specific allegations of the facts attending the eating of the oysters by deceased and the manner in which it is claimed the oysters produced the death of Hudgins. The facts alleged in the petition, taken in connection with the answer of defendant, were sufficient to present the whole defense claimed by the defendant. It is a well established rule of pleading in our court that facts alleged by one party need not be pleaded by the other. Lyon & Gribble v. Logan, 68 Texas, 525; Gaston v. Wright, 83 Texas, 286.

The court erred in refusing to sustain the defense that the injury was excepted from the obligation of the contract presented under the following assignment of error: "The court erred in overruling defendant's demurrer to plaintiff's evidence and in refusing to sustain and grant defendant's motion herein to instruct the jury in this case to return a verdict in favor of the defendant." The policy sued upon contracted to indemnify William T. Hudgins against bodily injuries sustained "through external, violent and accidental means," but the policy did not propose to indemnify against the consequence of all accidents. Much argument has been indulged in by the counsel for defendant in error, as well as the learned judge who wrote the opinion of the Court of Civil Appeals, to establish that the means by which Hudgins lost his life was accidental. In the view we take of the case it is unnecessary to discuss that question, for, granting that it comes within the terms of the policy as being "external, violent and accidental," yet it is just the character of accident which is specifically excepted from the obligation by this language: "This insurance does not cover * * * injuries fatal or otherwise resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled." The word "take" means, to eat as food, to swallow. Webster's Dict., word "take," 2d par. b. The true meaning of the policy will be shown by reading its different clauses which bear upon this question in connection; thus: "The Maryland Casualty Company * *. * does hereby insure William T. Hudgins * * * for the term of twelve months * * * against bodily injuries sustained through external, violent and accidental means. * * * This insurance does not cover injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken. * * * But it is understood that this policy covers the assured according to the terms hereof in the event of his injury from * * * choking in swallowing." The last clause quoted was introduced to qualify the excepting clause; the words "choking in swallowing" can refer to no word in the qualified clause except "taken," and serves to define the meaning of that word.

It is true that the policy should be construed in that manner which is most favorable to the assured, and if the language of the contract is fairly susceptible of any construction that would make the insurer responsible for the loss, it would be the duty of the court to place such

construction upon it; but the courts can not undertake to make a new contract in disregard of the plain and unambiguous language used by the parties. The plain meaning of this language is, that the company excepts from its liability all injuries which may arise from whatever thing of any kind or character poisonous or not Hudgins might voluntarily and consciously take into his stomach, that is, swallow as food or drink; and any other meaning attributed to the exception would be in disregard of the plain language and would give to the policy a force and effect never intended by the parties.

There is no doubt that the oysters, whether poisonous or not and whether taken accidentally or not, were consciously and voluntarily swallowed by Hudgins, and this being the case, it comes strictly and clearly within the terms of the excepting clause, and there can be no liability under that contract for the injury which resulted in his death. Carnes v. Iowa Traveling Men's Assn., 76 N. W. Rep., 683; Kasten v. Interstate Casualty Co., 74 N. W. Rep., 534; Early v. Standard Life and Accident Ins. Co., 71 N. W. Rep., 500; Pollock v. U. S. Mutual Accident Assn., 102 Pa., 234; McGlother v. Provident Mutual Accident Co., 89 Fed. Rep., 685; Westmoreland v. Preferred Accident Ins. Co., 75 Fed. Rep., 244; Bayless v. Traveler's Ins. Co., Fed. Cases, vol. 2, Case No. 1138; Cole v. The Accident Insurance Co., Limited, The Law Times, vol. 61, N. S., 227.

In Pollock v. United States Mutual Accident Association, before cited, the Supreme Court of Pennsylvania said: "To remove all doubt as to the liability of the association to the plaintiff in this case, the certificate further declares the benefits under it shall not extend to any death or disability which may have been caused by the taking of poison. It is not necessary that the poison be taken with an intent to produce death, in order to defeat a claim flowing from the right of membership. If the poison be innocently taken, and without any knowledge of the injurious effect which it was likely to produce, and did produce, so far as the person taking it is concerned, the effect may be said to be accidental. If we go a step further and admit in such case that the means are accidental, yet it is one of the accidental means expressly excepted from the protective power of the certificate."

In the case of Westmoreland v. Preferred Accident Association, before cited, there was the same exception in the policy as that under consideration. In that case the party died from inhaling chloroform which produced death. The chloroform was properly administered by a physician, and it was claimed, that, while the administering of the chloroform was intentional, the effect was accidental, and therefore within the terms of the policy. Judge Newman used this language: "How could there be a case that comes more clearly within the language of this exception, in the sense in which it must have been used? It need not necessarily, it seems to me, be malpractice or carelessness on the part of the physician or surgeon, but certainly, to come within this exception,

97 Supreme—9.

the medical or surgical treatment must be the proximate cause of death. If this is not true of this case, it seems difficult to imagine a case to which the exception would apply. So that considering the right to recover of the company under the general terms of the policy, or under either of the exceptions just referred to, I am clear that there is no liability." The death of Hudgins in this case was caused 'by swallowing unsound oysters, and whether it was "accidental or otherwise," it is strictly within the exception contained in the policy.

Many cases have been cited to show that inhaling of gas from which death followed must be voluntary, to bring it within the terms of this exception; but, granting the full force of those authorities, they do not support the claim of defendant in error, because there is no doubt from the evidence that the oysters were voluntarily taken into the stomach of Hudgins.

Miller v. Fidelity and Casualty Company, 97 Fed. Rep., 836, is more nearly analogous to the case now before us in its facts than any other that has been cited by appellees, but we do not regard it is sound in its doctrine as applied to the facts before that court, and it certainly does not bear upon the question now before us. The main question discussed by the court in that case was, whether the injury resulted from external, violent and accidental means, but neither of the questions are involved in the decision of this case. The case of Healey v. Mutual Accident Association is somewhat similar in its facts to this, but the question discussed and decided in that case was the same as in the preceding case.

It is claimed that while the eating of the oysters was not accidental, the eating of spoiled oysters was accidental, because Hudgins did not intend to eat unsound oysters—the accident consists in the state of the thing swallowed. This is a shadowy distinction, but, admitting it to be sound, it does not take the case out of the exception, for the spoiled oysters was a thing; it was "taken" from which the injury resulted, which brings the case under the exception and takes it out of the obligation of the contract.

We are of opinion that the undisputed evidence in this case shows that the death of William T. Hudgins was caused by means embraced within the exception from liability contained in the contract of insurance, and that no cause of action was or can be shown against the plaintiff in error upon that contract. The District Court erred in not instructing the jury to find a verdict for the defendant below, and the Court of Civil Appeals erred in affirming that judgment. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and judgment be here entered; that Sallie N. Hudgins take nothing by her suit; that the Maryland Casualty Company go hence without day and recover of Sallie N. Hudgins all costs in all of the courts.

*Reversed and rendered.*