KINGSLEY *v.* AMERICAN CENTRAL LIFE INS. CO.

1. INSURANCE—CONSTRUCTION OF POLICY.
   Where language of provision in life insurance policy is plain and ·easily understood, it must be construed as written therein.

2. SAME—LIMITING WORD CONSTRUED IN POPULAR SENSE.
   Word limiting liability in life insurance policy is considered as used in its ordinary, popular sense.

3. SAME—DEATH FROM INHALING CARBON MONOXIDE GAS NOT CAUSED BY POISON.
   Death of insured caused by inhalation of carbon monoxide gas did not result from poison within meaning of insurance policy excepting ''death resulting directly or indirectly from * * * poisons'' from double indemnity provision for accidental death.

Appeal from Washtenaw; Sample (George W.), J. Submitted April 12, 1932. (Docket No. 85, Calendar No. 36,422.) Decided June 6, 1932. Rehearing denied September 14, 1932.

Assumpsit by Blanche E. Kingsley against American Central Life Insurance Company, a foreign corporation, on the double indemnity clause of a life insurance policy. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed, and judgment ordered entered for plaintiff.

*Carl A. Lehman,* for plaintiff.

*Burke & Burke* and *Frank B. DeVine,* for defendant.

Sharpe, J. Charles Clay Kingsley was found dead in his garage in the city of Ann Arbor on April 11, 1930, and it is conceded that his death was caused by the inhalation of carbon monoxide gas. He had at that time a policy of insurance in the defendant company, in which the plaintiff, his wife, was named as beneficiary, which provided that the company should pay double the amount of the insurance therein provided for in case of death "in direct consequence of bodily injury effected solely through external, violent and accidental means," but which excepted from such double payment "death resulting directly or indirectly from  *  *  * poisons."

Two doctors, called as witnesses, testified that death was due to the inhalation of the gas, and that, because thereof, it was caused by poison. The trial court so found, and directed a verdict and entered a judgment thereon for defendant, from which plaintiff has taken this appeal.

It is insisted that, as monoxide gas is a poison, and as deceased died from the effects thereof, re-

covery may not be had under the double indemnity provision. When the language of a provision in such a policy is plain and easily understood, it must be construed as written therein. *Eynon* v. *Continental Life Ins. Co.,* 252 Mich. 279. But this court has also held that a word limiting liability therein will be considered· as used in its ordinary popular sense. *Ashley* v. *Agricultural Life Ins. Co.,* 241 Mich. 441 (58 A. L. R. 1208), and cases cited.

"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." *Imperial Fire Ins. Co.* v. *Coos County,* 151 U. S. 452, 463 (14 Sup. Ct. 379).

In *Lewis* v. *Ocean A. & G. Corp.,* 224 N. Y. 18 (120 N. E. 56, 7 A. L. R. 1129), the question presented was whether the injuries sustained, and for which recovery was sought, were "effected solely through accidental means." Mr. Justice Cardozo, speaking for the court, said:

"To the scientist who traces the origin of disease, there may seem to be no accident in all this.  *  *  * But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man.  *  *  * This test—the one that is applied in the common speech of men— is also the test to be applied by courts."

There are, we think, few persons, except those who have received a medical education, or those who have given the matter due consideration, who would ascribe a death resulting from· the inhalation of monoxide gas as due to poison. In an annotation to *Riley* v. *Inter-state Business Men's Accident Ass'n,* 184 Iowa, 1124 (169 N. W. 448), in 2 A. L. R.

57, 61, on exemptions limiting liability where death results from poison, it is said: "Cases involving exemptions from liability in case of death from inhaling gas are excluded." In the cases there reviewed, and those annotated to *Jones* v. *Hawkeye Commercial Men's Ass'n,* 184 Iowa, 1299 (168 N. W. 305), in 11 A. L. R. 380, 393, *Hawkeye Commercial Men's Ass'n* v. *Christy* (C. C. A.), 294 Fed. 208, in 40 A. L. R. 46, and *Zurich General Accident & Liability Ins. Co.* v. *Flickinger* (C. C. A.), 33 Fed. (2d) 853, in 68 A. L. R. 161, it will be found that in many of them the language used in the exemptions was "by taking poison," "by the taking of poison," and is usually followed by the words "asphyxiation," "gases," or words of like import.

In *Early* v. *Standard Life & Accident Ins. Co.,* 113 Mich. 58 (67 Am. St. Rep. 445), the exemption from liability was not fully stated in the quotation appearing therein. After the words "poison, contact with poisonous substances," appears "or inhalation of gas," clearly intimating that the insurance company did not consider the word "poison" as including asphyxiation by the inhalation of gas.

In our opinion, the natural, obvious meaning of the word "poison"—that understood by people at large—should be applied to it as used in this policy, rather than the technical one as stated by the physicians. We have no decisions directly in point. In 1 C. J. p. 456, it is said:

"Where the accidental inhalation of gas results in death by asphyxiation the exception of death resulting from poison is not applicable, even though the gas is of a poisonous nature."

See, also, 14 R. C. L. p. 1251 *et seq.,* and the cases cited in the footnotes in both publications.

In *U. S. Mutual Accident Ass'n* v. *Newman,* 84 Va. 52 (3 S. E. 805), the policy excepted liability for death caused "by the taking of poison or contact with poisonous substances." The court said, "All the indications showed that he had been killed by the coal gas." After stating that the terms used in such policies "are to be understood in their plain, ordinary, and popular sense," it was held that the trial court did not err "in refusing to instruct the jury in effect that inhaling coal gas was a taking of poison, if they believed coal gas to be a poisonous substance, which when inhaled destroys life."

The judgment entered in the trial court is reversed and set aside, with costs to appellant, and the cause remanded for the entry of a judgment for plaintiff for the amount due under the policy, with the costs of that court.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.