## ZEIGLER v. LATHAM.
### No. 14112.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 11, 1940.

Rehearing Denied Nov. 15, 1940.

Lem Billingsley, of Fort Worth, for appellant.

M. A. Bryan and Benson & Benson, all of Bowie, for appellee.

SPEER, Justice.

Homer B. Latham sued Abigail Y. Zeigler for commissions as a broker, growing out of a sale of real estate situated in Montague County, Texas. The parties will be designated here as they were in the trial court.

The parts of plaintiff's petition considered pertinent to a discussion of this appeal are, in effect: that defendant owned 1180 acres of land in Montague County prior to the dates involved in this suit; "that during the year 1936, the defendant, for the purpose of selling said property, listed same with the plaintiff herein, and said property was continued to be listed with plaintiff from and after said date, part of said time defendant listed said property with plaintiff, exclusively; that defendant at no time withdrew said listing but on the contrary the defendant continued negotiations with plaintiff concerning the sale of said property until some 30 or 60 days prior to November 10, 1938; however, if any notice of withdrawal was ever given plaintiff by defendant then said notice of withdrawal was waived by defendant"; that the land was listed with plaintiff to be sold at $16 per acre, but at a later date defendant authorized plaintiff to sell at $15 per acre, agreeing to pay him 5% commission on any sale made by him; that in pursuance to said contract of listing, plaintiff advertised the land and contacted persons

in an effort to make a sale, submitting all propositions to defendant when made by prospective purchasers; that among the persons to whom plaintiff had endeavored to sell the land was one J. A. Brite, with whom he had several interviews; that defendant resided in Illinois, and that her representative came to Texas at defendant's request and inquired of plaintiff the names of prospective purchasers with whom he had discussed a sale of the property; the representative was advised by plaintiff that J. A. Brite was one of the number, and that plaintiff granted the representative's request to permit him to see and talk with Mr. Brite; that on about November 10, 1938, defendant sold and conveyed the land to said Brite for a consideration of $15,-000; that defendant consummated said sale with full knowledge that plaintiff had procured the said J. A. Brite as a prospective purchaser; that it was through the efforts of plaintiff that the defendant and the purchaser were brought together, and that it was the plaintiff who had originally shown the said 1180 acres of land to the said J. A. Brite.

It was alleged in another form that plaintiff was the efficient and procuring cause of the consummation of the sale of the land by the defendant to Brite, and that because of said listing and contract of employment of plaintiff by the defendant, he was entitled to recover the commission as prayed for.

Plaintiff plead alternatively that if it should be determined that he had no specific contract with defendant for the sale of the land and a promise to pay him 5% commission on the gross sale price, then for the services performed by him, he is entitled to recover the sum of $750, as a reasonable compensation therefor.

Defendant answered by general demurrer and with a general denial. A jury trial was had and at the conclusion of taking testimony the court instructed the jury to return a verdict in favor of plaintiff for $737.50 (the amount was 5% of the price paid by Brite for the land). The verdict was in response to the instruction and from the judgment entered thereon this appeal has been perfected by the defendant.

There are twenty-eight assignments of error presented by defendant. The first six complain of the action of the trial court in excluding certain letters written by the authorized agents of defendant to the plaintiff during the period of time in controversy, and oral testimony offered at the trial.

It will be unnecessary for us to discuss each assignment separately, for the reason they all relate to two points involved, which seem to be the bone of contention between the parties. They are, (1) the court should not have instructed a verdict for plaintiff because the evidence was not of a conclusive nature and moreover, certain elements of plaintiff's case was supported alone by his own uncorroborated testimony, and (2) the trial court erroneously excluded from evidence certain letters that passed between the parties, which tended to disprove some of plaintiff's material allegations.

We think both points are well taken and require a reversal of the judgment entered.

The testimony abundantly supports the contention of plaintiff's allegations of ownership by defendant of land sold; that she lived in Illinois and that E. C. Teeter, a banker and nephew of defendant, residing at Peoria, Illinois, and Edgar A. Whitney, of the same place, were her agents, authorized to negotiate with plaintiff and employ him to sell defendant's lands in Montague County. That plaintiff's first negotiations with respect to selling defendant's lands were with defendant, Mrs. Abigail Y. Zeigler, a widow, and that thereafter correspondence was had between plaintiff and defendant, as well as with Teeter and Whitney. It is equally true that the evidence establishes unquestionably that defendant's land was listed with plaintiff for sale, the conditions of the listings, as to terms, price and time in which plaintiff should have the exclusive agency, varied over a period of about a year and a half. That at a time when plaintiff was authorized to offer the land for sale at a stipulated price, he contacted J. A. Brite and tried to sell to him. Brite was induced by plaintiff to go and inspect the premises, but having done so and upon learning the price at which it could be purchased, said he was not interested. Something over a year from the time plaintiff tried to sell to Brite, defendant sold the land to Brite, through Whitney, who advertised the property in a newspaper and Brite replied to the advertisement; that Whitney knew when he made the sale to Brite that plaintiff had previously attempted to sell to Brite. This is substantially as far as the uncontroverted facts go.

On May 20, 1936, plaintiff wrote defendant and asked for a listing of her land in Montague County, for sale, asking to be given a price at which it could be offered. Defendant replied by letter on May 22, that she would be glad to have plaintiff sell the property at $17.50 per acre net to her. In point of time the next communication was a telegram from defendant to plaintiff, dated March 2, 1937, which reads: "Answering wire will consider price sixteen dollars per acre net to me for the ranch subject to agricultural lease expiring November thirteenth this year acceptance within thirty days prefer two thirds cash balance secured by trust deed abstracts in proper form will be furnished."

On March 17, 1937, plaintiff wrote defendant that he was having trouble in selling the property at the price named by her, because other parties were claiming they had it listed and could sell for less, and asked her to both wire and write him that he could have exclusive agency for thirty days. In response to that letter, defendant wired plaintiff on March 19, 1937, in these words: "Proceed with sale exclusive rights granted you good thirty days." Complying with plaintiff's request, she wrote a letter on the same date of the telegram, the substance of which was that she had not listed the property for sale with the parties named in his letter, and stated that she had had several offers of $15 per acre, but nothing was ever done about them.

Plaintiff testified that in June, 1937, Mr. Whitney come to Bowie and they talked about the prospects of selling defendant's land; that Whitney changed the former agreement as to the price and agreed for defendant to pay plaintiff 5% commission for a sale; that he told Whitney at that time he had been trying to sell to J. A. Brite, a merchant there in town, and consented for Whitney to go and talk with Brite; Whitney did this and returned to plaintiff and said Brite wanted to buy it for less than it was worth. Brite's testimony corroborated that of plaintiff to the extent that at the instance of plaintiff he went and looked at the land when plaintiff had offered to sell it to him; he did not recall the date of his conversation with plaintiff; he knew the land before plaintiff talked to him, and "had his eye on it" although he didn't know who owned it. He said plaintiff wanted to sell it to him at $16 per acre, and he told plaintiff he "wouldn't be interested."

On June 30, 1937, Teeter wrote plaintiff that Whitney had reported to him his visit to Bowie and that Mrs. Zeigler (defendant) had authorized him to say to plaintiff that she was willing to offer the land at $16 per acre, with reservation in her of a right to participate in oil rentals or bonuses to the extent of one-fourth and that plaintiff's commission should be 5%.

A letter from Teeter to plaintiff, dated December 9, 1937, was admitted in evidence when offered by defendant. It acknowledged plaintiff's air-mail letter (not shown in record) and stated that no sale of the ranch land had been made, and added this: "Personally, I wish that the parties interested in buying this land would get down to brass tacks and stop quibbling about the matter." He further indicated that he thought the price at which it was offered was a bargain and was surprised that some one had not taken it.

Teeter sent plaintiff a telegram on February 26, 1938, as follows: "Answering yours of 24th will consider $16.00 an acre cash for immediate acceptance as we are negotiating with other parties on sale no exclusive listing to any one."

We deem it unnecessary to cite authorities supporting the proposition that to entitle a broker to compensation for negotiating a sale of real estate he must have a contract, expressed or implied, with the owner or his representative to that effect, and that the services rendered by him under that contract were the efficient and procuring cause of a sale made later by the owner. And that to sustain a recovery the burden rested upon the broker to establish these facts. The principle was announced by this court in Parkey v. Lawrence, Tex. Civ.App., 284 S.W. 283, and so far as we are able to find, no court of this State has held to the contrary. It must follow logically that even if the listing or contract for sale is established, plaintiff rests under the further burden of showing that he was the efficient and procuring cause of the sale made by the owner. Keener v. Cleveland, Tex.Com.App., 250 S.W. 151.

The plaintiff in the instant case undoubtedly established the fact that he had been employed by defendant to sell her land; that his employment began with defendant's letter of May 22, 1936, above referred

to by us. Plaintiff alleged that his agency continued throughout the time between that date and until August 1938, when the land was sold through another agent to J. A. Brite, whom plaintiff claims was his customer; that defendant at no time withdrew said listing from him, but said listing contract and agreement continued until the land was sold by defendant. Plaintiff testified that the listing was continuous at all times mentioned. We think he is corroborated in this from May, 1936, until at least in December of 1937. Plaintiff also testified to efforts made by him to sell the property after December, 1937. He said that in May, 1938, Mr. Brite tried to lease the land for grazing purposes but the owner would not lease, and at that time he tried to sell to Brite; he testified that he did not abandon his efforts to sell the property after he was employed and that his correspondence with defendant continued throughout the two and a half years from May, 1936, until the sale in August, 1938. His testimony in the matters mentioned had no corroboration except in the correspondence shown to have been had between May, 1936, and December, 1937, along with the telegram of date February 26, 1938. That telegram seems to be in response to a wire from plaintiff asking if defendant would consider an offer of $16 per acre cash for the land, to which she replied in the affirmative. By letter of June 30, 1937, plaintiff had been authorized to sell for $16 with the mineral reservations mentioned by us above. Plaintiff's testimony discloses that with the many changes made by defendant in prices and terms, the matter dragged along for the two and a half years and he said he was unable to make a sale.

The record shows that Whitney advertised in a Wichita Falls paper offering the land for sale; Brite saw the advertisement on about June 1, 1938, and wrote Whitney asking for the price at which it could be bought; after some correspondence back and forth, Brite bought the land for $12.50 per acre and entered into a contract for it in August of that year; the deeds passed at a later date and the purchase money paid.

As above stated, the trial court instructed a verdict for plaintiff for 5% of the purchase price; plaintiff's alternative plea for quantum meruit was not considered in entering the judgment.

It is now a well-settled principle in our procedure that the uncorroborated testimony of a party at interest in a suit fails to furnish conclusive evidence for the establishment of a fact. An issuable fact for determination by jury is only presented by such testimony. Thraves v. Hooser, Tex.Com.App., 44 S.W.2d 916; Texas Cotton Growers' Ass'n v. McGuffey, Tex.Civ. App., 131 S.W.2d 771, writ dismissed; Texas Employers' Ins. Ass'n v. Roberts, Tex.Com.App., 139 S.W.2d 80, and the many authorities cited in those cases.

Whether or not plaintiff's agency was continuous during the time in question was one for the jury, there being no corroborating facts shown to support his own testimony on the point, since his last communication with defendant or her agents. There is nothing in the evidence to corroborate his testimony that he was endeavoring to make a sale subsequent to his conversations with Brite in the spring of 1937; the length of time elapsing between those matters and the date of the sale nearly a year and a half later are somewhat persuasive that he had abandoned his efforts to sell or had had a reasonable time in which to effectuate a sale and if given an opportunity, the jury might have so found, in which event there would have been sufficient evidence to support such a verdict.

In Kitchen v. Lloyd, Tex.Civ.App., 14 S.W.2d 335, it was held that a broker was not entitled to an instructed verdict in his behalf, because although his testimony as to the brokerage contract was uncontradicted, he was the only witness thereto, and being an interested party, the weight of the testimony given by him should have been submitted to the jury. Citing Chicago, R. I. & G. R. Co. v. Hammond, Tex. Civ.App., 286 S.W. 483.

It is contended by plaintiff that because the uncontradicted evidence in the case shows that Brite had been contacted by him in an effort to sell the defendant's land, that defendant, through Whitney, knew those facts and thereafter sold to Brite at a price satisfactory to seller and purchaser, no further testimony would be required to establish that he was the efficient and procuring cause of the sale. As a general proposition the contention is sound. Keener v. Cleveland, Tex.Com. App., 250 S.W. 151.

A similar principle is announced by the Supreme Court in Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 297, 195 S.W. 848, but under the facts of that case, which are in many respects similar to those in the instant one, the court said: "A different state of case is presented and therefore a different rule prevails where the broker's effort with a particular buyer has, after fair opportunity and without any fault of the owner, come to naught, resulting in the failure and termination of his negotiation; and, later, the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker cannot be justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account. Pryor v. Jolly, 91 Tex. 86, 40 S.W. 959; Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884."

The same rule as that stated in the Goodwin v. Gunter case, supra, was again announced in Settegast v. Timmins, Tex.Civ. App., 6 S.W.2d 425, writ refused. It now seems to be the settled doctrine in such cases as this. See Tex.Jur., Vol. 7, p. 479, § 82, and the many cases there cited. Here we have an instance in which plaintiff contacted Brite and tried to sell the land in May, 1937, failed in his effort to effect a sale, and aside from plaintiff's uncorroborated testimony, never attempted again to sell to his customer for over a year, when a sale was made by another instrumentality, and the court instructed a verdict in his favor without regard to whether or not he had had "a fair opportunity" or whether he had abandoned his efforts to sell to Brite. These were conditions which involved issues of fact for the jury under proper inquiries. Whether or not plaintiff was the efficient and procuring cause of the sale was an essential element in plaintiff's right to recover. They should have been determined by the jury and not by the court. Defendant's assignments of error Nos. 7, 8, 10, 11, 12 and 13 raise the questions discussed and complain of the peremptory instruction. They are sustained and require a reversal of the judgment entered.

Another point raised by defendant is that the court erroneously excluded many letters passing between the parties and certain answers of witnesses given in depositions and in oral testimony. We think some of these assignments are good,

while there is no merit in others; we shall discuss the former.

We repeat, plaintiff plead and testified that his agency was continuous from May, 1936, until the land was sold in July or August, 1938; that his agency had not been withdrawn nor terminated by the defendant.

Under defendant's assignments 5 and 6, it is contended that under plaintiff's allegations and testimony of the several listings, at varying prices and lengths of time to which they were limited and in view of the long period of time involved, and the futile efforts of plaintiff to effect a sale to Brite, rendered certain letters and telegrams from defendant's authorized agents to plaintiff admissible in evidence to contradict his allegations and evidence, but they were excluded by the court. Some of those complained of read in part:

"Peoria, Illinois, Sept. 8, 1937

"Mr. Homer B. Latham

"Bowie, Texas

"In Re: Zeigler Ranch near Bowie, Texas

"Dear Mr. Latham:

"Referring to the matter of the sale of above ranch, will say that I had a talk with Mr. Teeter today, and we are both disappointed to find that we do not seem to be getting any place in the way of a sale of this land.

"It will soon be time to make a new agricultural lease on the ranch and Mrs. Zeigler wants some definite information as to whether or not you are going to be able to close the deal you have had on for some time.

"This matter has been in your hands for quite a while so they want me to tell you that if you cannot close the sale by October 1st, 1937, we feel that we should make an effort through another source to dispose of the ranch.

"Please let us hear from you by return mail and greatly oblige.

"With best wishes, I remain,

"Very truly yours,

"(Ed A. Whitney)."

Another letter offered in evidence by defendant and excluded by the court reads, in part, as follows:

"December 13, 1937.

"Mr. Homer B. Latham

"Bowie, Texas

"In Re: Zeigler Ranch near Bowie, Texas.

"Dear Mr. Latham:

"Your letter of December 10th, 1937, relative to the above land reached me today,

and I hasten to reply. I have had a talk with Mr. Teeter and read the letter you wrote him under date of December 11th, 1937, and summing the whole matter up, we are in a position to tell you that no one has the exclusive sale on this place at the present time, and it has not been leased to any one.

"To be frank with you Mr. Latham, will tell you that I left Bowie about a month ago thoroughly disgusted over the many complications and the unbusinesslike methods that I ran into while there, and I am suggesting to Mr. Teeter that if a deal is not closed by or before December 25th, 1937, that we call off all negotiations, rub out the slate, and start all over again by withdrawing any and all prices quoted in the past.

 * * * * * *

"Mr Teeter has read this letter and it meets with his approval.

"Thanking you for your letter, I remain, with best wishes,

"Very truly yours,
"(Ed A. Whitney)."

Also defendant offered in evidence (excluded by the court) the following telegram:

"Mr. Homer B. Latham, Attorney
"Bowie, Texas

"All quotations and options on Zeigler ranch withdrawn January third.

"Dec. 30, 1937. E. C. Teeter."

The letters and telegram appear to have been excluded by the court upon the theory that they were offered for the purpose of showing a withdrawal of the listing with plaintiff and a termination of his agency when defendant had not specifically pleaded such withdrawal and termination; she answered only by a general denial. If the question rested alone upon that theory, it would not be without some difficulty to determine whether or not such testimony could be offered by defendant.

Under the provisions of Article 2006, R. C.S.: "A general denial of matters pleaded by the adverse party which are not required to be sworn to, shall be sufficient to put the same in issue." Our courts have construed the above provisions to mean that if a defendant, desiring to introduce testimony which does not tend to rebut the facts of plaintiff's case, but which shows an independent reason why the plaintiff should not recover upon the case stated and proved, then defendant must plead the facts which will avoid the legal consequences of plaintiff's case, before he is entitled to introduce the evidence. 33 T.J. p. 478, § .55. The same text further lays down this rule: "Usually the averments of the petition settle any question as to whether the defendant must plead any particular matter specially; that is to say, if the plaintiff has anticipated some defense that would more properly have been raised in the defendant's pleading, then the defendant need not plead such facts."

Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745, 747, 64 L.R.A. 349, 104 Am.St.Rep. 857, 1 Ann.Cas. 252, was an insurance policy case which involved exceptions to liability; after stating parts of plaintiff's petition and referring to the answer which it was claimed to be insufficient to authorize the introduction of certain testimony, the court said: "It is a well-established rule of pleading in our court that facts alleged by one party need not be pleaded by the other. Lyon & Gribble v. Logan, 68 Tex. [521] 525, 5 S.W. 72, 2 Am.St.Rep. 511; Gaston v. Wright, 83 Tex. [282] 286, 18 S.W. 576."

In this case, the plaintiff plead that, "defendant at no time withdrew said listing but on the contrary defendant continued negotiations with plaintiff concerning the sale of said property until some 30 or 60 days prior to November 10, 1938." Any withdrawal of the listing with plaintiff was a special defense which under the rule above announced should have been plead by defendant. From the last above-quoted part of plaintiff's petition, it will be observed that he anticipated this defensive matter and negatived it in his petition. Under such a state of the record we believe defendant would have been entitled to prove a withdrawal of the listing, if she had testimony supporting it. When the testimony was offered by defendant and rejected by the court, defendant urged its admissibility both upon the ground that plaintiff had plead the listing was not withdrawn from him and defendant interposed a general denial thereto, and further, "To impeach the witness (plaintiff) to show that he didn't have the sale." We take the last reason assigned to mean that because plaintiff had testified that his listing and agency were continuous from the beginning of the negotiations until the sale was made, the proffered testimony was admissible to contradict it. The reasons assigned by defendant in support of her contention of the admissibility of the testimony, we think, are sufficient to support her bill of exception to

its exclusion; for the reason last urged the testimony should have been admitted.

We likewise think the testimony should have been admitted under the pleadings. Where, as in this case, plaintiff anticipated defensive matters, such as that the listing with him had not been withdrawn or terminated, and defendant plead the general denial, she should not have been denied the right to offer testimony because she had not duplicated the allegation of plaintiff in an affirmative form; the pleadings were sufficient to raise the issue and when testimony was offered by either party on the issue, it should have been admitted. A statement of the rule as contended for by plaintiff was announced in Stephenson v. Stewart, Tex.Civ.App., 285 S.W. 908, but it does not appear from that opinion that plaintiff had so anticipated defendant's defense by pleading that such conditions did not exist; in this lies the distinction between that and the instant case. We think the letters and telegrams tended to show impatience on defendant's part at the long drawn out efforts of plaintiff to sell the property, that he had had much time in which to effect a sale and that in defendant's judgment no progress was being made, that his efforts had all come to naught and presented a jury question of whether at the date of the sale plaintiff's listing was effective and whether or not he was the efficient and procuring cause of the sale. These questions were for the jury and should not have been taken away by the court with an instructed verdict. Fifth and sixth assignments of error raise the question presented and are sustained.

Others of the twenty-eight assignments complain of the rejection of evidence, and without enumerating all, they involve letters to, from and concerning a proposition of one Gracy to buy or rent the land and answers to inquiries in interrogatories to the witnesses Teeter and Whitney, and answers of Brite while testifying orally. We have examined each of these and find no merit in them and they are overruled.

Summing up the whole case, we hold that reversible error is shown in the rejection of the evidence above discussed, and the giving of an instructed verdict for plaintiff when jury questions were involved.

For the errors pointed out, the judgment of the trial court must be reversed and the cause remanded for another trial, in accordance with these conclusions.

Reversed and remanded.