**Mrs. Joan Laverne PICKERING, Appellant,**

v.

**FIRST PYRAMID LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

**No. 7439.**

Court of Civil Appeals of Texas, Beaumont.

Feb. 8, 1973.

James D. McNicholas, Beaumont, for appellant.

Larry Germer, Beaumont, for appellee.

KEITH, Justice.

The appeal is from a take-nothing judgment entered in the beneficiary's suit to recover accidental death benefits under a policy of life insurance. The case was tried to the court upon an agreed statement of facts which disclosed that the defendant had issued a policy of life insurance upon the life of plaintiff's husband. The policy provided for a basic payment of $10,000 and an additional $20,000 in the event death resulted from violent and accidental means as defined in the policy.

While the policy was in full force and effect, the insured was on duty as a police officer and was sitting in a parked patrol car on a "stake out" for burglars. The motor of the automobile was running and he died of carbon monoxide poisoning. It was stipulated that the cause of death was from carbon monoxide poisoning acute with suffocation resulting from lack of oxygen; that the carbon monoxide poisoning was not intended by the decedent; that the decedent did not know the car in which he was a passenger contained such gas or that he was inhaling such gas. The defendant paid the face value of the policy and this suit was for the accidental death benefits.

The defendant denied liability and pleaded that the policy contained an exclusion reading: "That the insured's death or bodily dismemberment shall not result from or be caused, directly or indirectly, by any of the following: . . . (f) Poisoning or infection (other than that occurring simultaneously with and in consequence of accidental death or accidental bodily dismemberment, as these terms are herein defined) . . . ."

■ Able counsel for plaintiff argues persuasively that the average layman would assume from the derivation of the word "poison" that the exclusion "would only mean when one took poison as by way of a drink, or brought about one's own self-destruction via suicide by the ingestion by way of poison, either by drink or by pills. Surely, the common interpretation would not apply to the instant case." Several out of state cases and textual authorities are cited in support of the argument so posited.

In this instance, we do not write upon a clean slate and the arguments so made must yield to controlling precedent found in our own jurisdiction. In United Fidelity Life Insurance Company v. Roach, 63 S.W.2d 723 (Tex.Civ.App., Amarillo, 1933, error ref.), the court noted the diversity of holdings on the question of whether carbon monoxide poisoning was excluded under the language in policies with substantially the same wording. It concluded in a well-reasoned opinion "that the use alone of the word 'poisoning' means, or was intended to mean and include, an involuntary taking or inhalation of poison and therefore relieves the insurance company from liability." (63 S.W.2d at 725) It was the inhalation of carbon monoxide which was involved in *Roach*.

We find no indication that the rule so enunciated has been modified or abrogated. Under our view of the law controlling the disposition of this case, it is unnecessary to review the authorities in other jurisdictions which have reached a contrary result. For those interested in pursuing the subject, we need but point to the comprehensive annotation found in 14 A.L.R.3d 783, Insurance —Poison (1967), where the cases are reviewed in detail.

■ Plaintiff argues, at least inferentially, that there is ambiguity in the exclusion, but there was no pleading of ambiguity. It has been said: "An ambiguity in a contract must be raised by the pleadings and in the absence of such a pleading the court will not hear evidence as to the intention of the parties which is different from that expressed in the contract." Ross v. Burleson, 274 S.W.2d 105, 107 (Tex. Civ.App., San Antonio, 1954, no writ). See also, Jones v. Dumas Development Co., 229 S.W.2d 936, 939 (Tex.Civ.App., Amarillo, 1950, error ref. n. r. e.); Anderson-

Dunham, Inc. v. Lee Rubber & Tire Corp., 378 S.W.2d 99, 102 (Tex.Civ.App., Dallas, 1964, error ref. n. r. e.); Skyline Furniture, Inc. v. Gifford, 433 S.W.2d 950, 954 (Tex.Civ.App., El Paso, 1968, no writ); and 13 Tex.Jur.2d, Contracts § 373 (1960).

█ Further, since this case was tried upon an agreed statement of facts, we are without authority "to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily *compelled* by the evidentiary facts agreed upon." Perry v. Aetna Life Insurance Company of Conn., 380 S.W.2d 868, 874 (Tex.Civ.App., Tyler, 1964, error ref. n. r. e.), emphasis supplied.

█ █ Although we are sympathetic to the plaintiff's position, it is clear that insurance contracts must be construed just as other contracts. Republic National Life Insurance Co. v. Spillars, 368 S.W.2d 92, 94, 5 A.L.R.3d 957 (Tex.1963). Courts cannot undertake to make new contracts for the parties in disregard of the plain and unambiguous language used in the policy. Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745, 747, 64 L.R.A. 349 (1903); and Royal Indemnity Company v. Marshall, 388 S.W.2d 176, 181 (Tex.1965).

█ *Roach,* supra, having received the unqualified approval of our Supreme Court, has not been challenged in the nearly forty years which have elapsed since it was written. Under the rule of stare decisis, it is binding upon this court until changed by the Supreme Court. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 193, n. 3 (Tex.1968). If the rule of *Roach* is to be changed after this long time, it is the duty of our court of last resort and not that of an intermediate court.

The judgment of the trial court is affirmed.

DIES, Chief Justice (dissenting).

I respectfully dissent. The majority opinion—following the trial court—holds that the 1933 decision of United Fidelity Life Ins. Co. v. Roach, 63 S.W.2d 723 (Tex.Civ.App., Amarillo, 1933, error ref.), is dispositive of the case we review. However, in my view, there is enough distinction between that case and ours to permit us to adopt a more enlightened and common sense attitude to this dispute.

In *Roach,* the policy excluded coverage for accidental death resulting " 'from suicide whether sane or insane, from murder, poisoning, bacterial infection, illness or disease of any kind.' " (63 S.W.2d at 724) Here the exclusion reads, "poisoning or infection (other than that occurring simultaneously with and in consequence of accidental death . . . ."

The parties stipulated that "[t]he autopsy stated that the cause of death of Jack Lee Pickering was carbon monoxide poisoning acute with suffocation resulting from the lack of oxygen . . . ." Therefore, examining the exclusion literally and assuming the *Roach* holding that a carbon monoxide induced death is exclusionary "poison" still to be the law, nevertheless, the lack of oxygen was a non-exclusionary, accidental and simultaneous cause of death.

There is no contention that Officer Pickering's death was not accidental. In interpreting the language and meaning of this insurance policy, we should be governed by the understanding of the average man. In Kingsley v. American Central Life Ins. Co., 259 Mich. 53, 242 N.W. 836 (1932), the policy excluded accidental death benefits "resulting directly or indirectly from * * * poisons." That case quotes Justice Cardozo in Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129 (1918) using this unanswerable language:

" 'To the scientist who traces the origin of disease there may seem to be no accident in all this. * * * But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man. * * * This test—the one that is ap-

plied in the common speech of men—is also the test to be applied by courts.'"

44 Am.Jur.2d, Insurance, § 1340 (1969) states:

"[I]t has been held, despite some contrary authority, that death caused by the inhalation of carbon monoxide gas did not result directly or indirectly from 'poison' within the meaning of an exception of death from poison in a double indemnity clause in a life policy, even though such gas technically is a poison."

This policy was written by appellee. If this type of accidental death was to be excluded from the policy, there is no good reason not to require it to be spelled out understandably in the policy rather than relying on an exclusion for "poison" which, to an average man, would not include this cause of death.