**Clista Claudine TUTTLE, Plaintiff,**

v.

**GAMBLE ALDEN LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. CA–2–1471.**

United States District Court,
N. D. Texas,
Amarillo Division.

Dec. 20, 1974.

Wayne P. Sturdivant, Gibson, Ochsner, Adkins, Harlan & Hankins, Amarillo, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case came on to be tried before the court without a jury on the 16th day of December, 1974, with all parties and their attorneys present. After considering the pleadings, the evidence, the argument and briefs from counsel, the court files herewith its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I

J. Tuttle was the insured under a policy issued by the Gamble Alden Life Insurance Company, Plaintiff's Exhibit # 1. Plaintiff, Clista Claudine Tuttle, is the surviving wife of J. Tuttle and the named beneficiary under said insurance policy.

### II

The capital sum under the policy is $24,000.00 payable for the loss of life resulting from one of the specified accidents, the one involved in this case being:

"AUTOMOBILE ACCIDENTS

"Any accident ocurring while the Insured is actually riding in or driving any private passenger automobile. As used in this policy, automobile means a land vehicle of the type commonly and ordinarily known and referred to as 'automobile', and a private passenger automobile means a private automobile of the private passenger design designed primarily for transporting persons."

The policy further provided that it did not cover any loss caused or contributed to by:

". . . (e) carbon monoxide gas; . . . ."

R. C. Hamilton, Kolander, Templeton & Hamilton, Amarillo, Tex., for plaintiff.

It is noted that the face of the policy states "This is a limited policy, read it carefully" and it was not intended nor can it be construed to cover any vehicles or types of accidents other than that specifically described therein. The policy was in full force and effect at the time of the accident hereinafter described.

## III

On March 22, 1973, J. Tuttle was driving his pickup automobile in a northerly direction on a city street in the City of Amarillo, Texas. The pickup, apparently out of control, hit a tree, overturned, and came to rest on its left side with Mr. Tuttle, who was the only occupant, pinned in the wreckage as his arm was out of the left-side window and caught between the pickup and the pavement. Gasoline escaped from the vehicle, and shortly after the pickup came to rest, the pickup caught fire. Mr. Tuttle died before he could be removed from the vehicle, and the primary cause of his death was the fire.

## IV

At the time of the accident, Mr. Tuttle was driving from his residence to his lawyer's office for the purpose of discussing with him certain legal matters. He was not engaged in any other pursuit nor was he engaged in hauling any materials or supplies, but was only transporting himself for the above purpose.

## V

Mr. Tuttle owned two motor vehicles at the time of the accident in question, but one, a station wagon, was not operable and the only vehicle that he had been using for several months was the pickup in which the accident occurred.

Mr. Tuttle's vehicle was a Dodge pickup with an "A" frame and winch located in the bed thereof.

## VI

Mr. Tuttle was a welder by trade but had not been employed except on very few occasions in the six months prior to his death.

## VII

Mrs. Tuttle testified that this pickup was used for obtaining family groceries and "going places." On the day of the accident he had picked up a commode to replace a defective one at their residence.

## VIII

The court finds as a fact that the pickup driven by Mr. Tuttle and the one in which he died was not a private automobile of the private passenger design designed primarily for transporting persons.

## IX

Dr. Diaz-Esquivel, a pathologist and practicing physician, testified that in all likelihood the fire at the scene of the accident produced carbon monoxide gas which was inhaled by the deceased. He was burned by first, second, and third-degree burns over eighty-five percent of his body and at the time of his death a blood test showed a 0.36 percent alcohol content. Also, the certificate of death and autopsy showed that the immediate cause of death was acute alcohol intoxication and carbon monoxide poisoning. It was Dr. Diaz-Esquivel's opinion that Mr. Tuttle's death resulted from the inhalation of carbon monoxide gas caused by the fire rather than carbon monoxide from any other source such as leakage or defective engine or automobile parts. Dr. Diaz-Esquivel stated that in most cases of fire in enclosed areas death resulted from carbon monoxide poisoning rather than the person being actually burned to death from the flames.

## QUESTIONS PRESENTED

The questions to be determined in this case are whether or not the policy affords coverage under these facts. The defendant takes the position that it does not afford coverage because:

a) The vehicle in which the decedent was riding was not designed primarily for transporting persons, and therefore was not within the

Automobile Accident coverage provision; and

b) That the death of Mr. Tuttle was caused or contributed to by carbon monoxide gas and therefore falls within an exception to coverage under the policy.

Conversely, plaintiff contends that:

a) The vehicle was used primarily as a passenger automobile rather than as a vehicle to haul materials and supplies, etc.; and

b) That the cause of the death was the fire at the time of the accident, and that the exception as to carbon monoxide gas would exclude coverage only in those cases where the carbon monoxide poisoning resulted from a defective exhaust system or suicide rather than carbon monoxide gas produced from a fire.

The following Conclusions of Law are reached by the court:

## CONCLUSIONS OF LAW

### I

This court has jurisdiction because the uncontroverted evidence is that the plaintiff is a resident and citizen of the State of Texas and the defendant insurance company is a citizen of a state other than Texas and that its principal place of business is not in Texas. 28 U.S.C. § 1332.

### II

■ As the primary cause of Mr. Tuttle's death was the fire which was ignited by the leaking gasoline at the time of the accident in question, the accident and resulting fire were risks covered under the policy; thus, the insured's death was not excluded from coverage by the carbon monoxide exclusion.

Defendant relies on United Fidelity Life Ins. Co. v. Roach, 63 S.W.2d 723

(Tex.Civ.App.—Amarillo 1933, writ refused), and Pickering v. First Pyramid Life Ins. Co. of America, 491 S.W.2d 184 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.), as authority that the carbon monoxide exclusion in the instant policy should operate to deny coverage in this case. The court is of the opinion that these cases are distinguishable and are not controlling. In both of the cited cases, the carbon monoxide gas was not produced nor did it result from the occurrence of a risk covered by the policy. In *Roach,* the carbon monoxide gas escaped from a faulty gas heater, and in *Pickering* the carbon monoxide gas leaked from a faulty automobile exhaust system. In the present case, however, the carbon monoxide gas resulted from the insured risks of the accident in the vehicle and the resulting fire. It is true that the physiological and chemical description of the immediate cause of the insured's death was carbon monoxide intoxication. Dr. Diaz-Esquivel testified that the normal and usual chemical reaction experienced by one who dies in a fire in a closed area, such as the cab of a pickup, is "carbon monoxide asphyxiation." Thus, the carbon monoxide gas resulted as a chemical reaction in the natural and probable chain of events following such a fire, and death by fire in an automobile is a covered risk. In such circumstances, the carbon monoxide exclusion does not operate to exclude coverage. Norbeck v. Mutual of Omaha Ins. Co., 3 Wash.App. 582, 476 P.2d 546 (1970), and Frontis v. Milwaukee Ins. Co., 156 Conn. 492, 242 A.2d 749 (1968).

### III

■ As to whether or not a pickup is a passenger automobile within the meaning of the policy in question is a question of material fact and to be determined by the trier of the facts, which is the court in this instance. Johnson v. Home Indemnity Company, 401 S.W.2d 871 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.).

## IV

■ The court has found in its findings of fact that the pickup in question is not a private automobile of the private passenger design designed primarily for transporting persons. Thus, the incident in question in this case is not one of the accidents covered by the terms of the policy issued by the defendant.

The only evidence introduced at the trial as to whether or not the pickup driven by the decedent at the time of the accident was designed primarily for transporting persons, was the testimony of the witness Caulfield who stated:

"Well, of course, the primary design of a pickup is to haul a load, to haul cargo primarily."

Otherwise the evidence that the pickup in question was a private automobile of the private passenger design was principally concerned with how the pickup was used. The court has found that this particular pickup was used on the occasion in question as well as by the family unit for several months prior thereto, primarily as a private passenger automobile, but its use is not the controlling factor, but rather the primary design of the vehicle controls as to whether or not this particular vehicle was covered by the policy.

## V

The court, from common knowledge and from this evidence as to its use, recognizes that a pickup is used for the dual purposes of transporting persons as well as goods and materials. The courts of Texas have held that a pickup is an automobile designed and used for such dual purposes. Mutual Benefit Health and Accident Association v. Hudman, 385 S.W.2d 509 (Tex.Civ.App.— Austin 1964, writ granted). The Texas Supreme Court reversed this case but did not discuss or determine the question of whether or not a pickup was a private passenger automobile. It is noted, however, that this case did not contain a definition of a private passenger automobile which stated that it was to be one that was "designed *primarily* for transporting persons" (emphasis ours). But, the policy in the *Hudman* case, *supra*, merely said that a covered injury must be received while driving or riding in any private passenger automobile without limitation as to its primary design.

The other cases cited in support of the plaintiff's position that the pickup comes within the definition given in the subject insurance policy are all distinguishable. None of these cases construe policies where the definition of the vehicle provides that to be covered the accident must have occurred in a private automobile of the private passenger design designed *primarily* for transporting persons. Pennell v. United Ins. Co., 150 Tex. 541, 243 S.W.2d 572 (1951); Mutual Benefit Health and Accident Assoc. v. Hudman, 385 S.W.2d 509 (Tex.Civ. App.—Austin 1965, writ granted); Johnson v. Home Indemnity Co., 401 S. W.2d 871 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.); Prudential Ins. Co. of America v. Lucas, 456 S.W.2d 429 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.); State Farm Mutual Automobile Ins. Co. v. Durrett, 472 S.W.2d 214 (Tex. Civ.App.—Fort Worth 1971, no writ). These cases were determined by the use of the vehicles at the time of the accident or the use made of the pickup by the owner and his family. The policy issued by the defendant in this case does not define or describe the covered vehicle in terms of use for any particular purpose but talks about design and primary design.

Although it may be found that a pickup is designed for dual purposes, that is the transporting of persons and goods as in *Hudman, supra,* there is no evidence in this case that the pickup is designed primarily for the transportation of persons. In fact, the only evi-

dence on this point is that of the witness Caulfield quoted above which supports the finding of this court and conclusion of this court that the pickup driven by the plaintiff and in which he was riding when the accident occurred was not designed primarily for transporting persons. The most that could be said was that it was a vehicle designed for a dual purpose which does not satisfy the requirement of the policy.

## VI

Accordingly, the court concludes, in accordance with the above findings of fact and in accordance with the language of the policy and the evidence produced at the trial, that the pickup does not satisfy the requirements of the policy and the accident in question is not covered by the terms of the policy.

This conclusion is supported by Mutual Benefit Health and Accident Association v. Hudman, *supra*, when it states, although in dicta, as follows:

"If appellant had intended to limit its coverage to cars designed exclusively for the transportation of passengers it was, in our opinion, incumbent upon it to so write its policies. Not having done so, we hold that this pickup is a 'passenger automobile' within the meaning of the policy in suit."

Here the defendant company so wrote its policy. The words "exclusively" appearing in the language of *Hudman, supra,* is comparable and the court here concludes it to mean the same as the word "primary" in the defendant's policy in this case.

## VII

Judgment will be entered for defendant and taxing costs against plaintiff.

The Clerk will furnish a copy hereof to each attorney.