### CITIZENS' LOAN INV. CO. v. YOUNG. *
### (No. 2035.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 31, 1923.)

**1. Trover and conversion ⬉35—Burden of proof on plaintiff to show facts establishing ownership.**

In an action for the conversion of cattle, involving issues of fact as to ownership, the burden of proving the facts relied on by plaintiff to show its ownership rested on plaintiff, and was not shifted to defendant upon the making of a prima facie case by showing a taking from plaintiff's possession.

**2. Chattel mortgages ⬉136—Unauthorized placing of brands upon cattle mortgaged cannot affect mortgagee's rights.**

The placing without the mortgagee's consent of different brands upon the cattle mortgaged after the execution of the mortgage, cannot affect the mortgagee's rights.

**3. Trover and conversion ⬉34(4)—Defense of claim under chattel mortgage admissible without special pleading.**

Defendant in an action for the conversion of cattle, was entitled to show ownership under a chattel mortgage and mistake in the description of the brand without special pleading.

**4. Trover and conversion ⬉69—Judgment for recovery of cattle held authorized by special verdict.**

In an action for conversion of cattle claimed by defendant under his right as mortgagee, a judgment for plaintiff for five head of cattle *held* authorized by the special verdict.

**5. Trover and conversion ⬉66—Identity of cattle mortgaged held question for jury.**

In a suit for conversion of cattle claimed by defendant under mortgage, where it appeared that plaintiff's cattle were marked with a X-bar brand while defendant's cattle were marked with a cross brand, and some of the cattle seized by defendant bore both brands, evidence *held* sufficient to warrant the submission of the issue to the jury as to identity of cattle bearing the two brands.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit for conversion by Citizens' Loan Investment Company against Frank Young. Judgment for defendant and plaintiff appeals. Affirmed.

Hoover, Hoover & Willis, of Canadian, for appellant.

Sanders & Jennings, of Canadian, for appellee.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 7, 1923.

BOYCE, J. We have been convinced, on motion for rehearing, that our former judgment in this case was erroneous. The original opinion, will be withdrawn, and the following adopted as the opinion of the court, disposing of the case:

This is a suit for conversion, brought by Citizens' Loan Investment Company against Frank Young. The plaintiff alleged that on April 22, 1921, it was the owner and in possession of 28 head of three year old steers, branded X on left shoulder, of the value of $80 per head, and that on said day the defendant, Frank Young, unlawfully took possession of said cattle and converted them to his own use, to plaintiff's damage in the sum of their said value. The defendant answered by general denial and specially that he was entitled to the possession of said cattle under the terms of certain mortgages executed by L. S. Palmer covering several hundred head of cattle branded + on left thigh.

The plaintiff's claim to the cattle originated in a mortgage executed by L. S. Palmer, dated October 18, 1918, whereby he mortgaged to the plaintiff several hundred head of cattle branded X on left shoulder; it being claimed that the steers taken by defendant were a part of the cattle included in that mortgage. This mortgage was renewed from time to time, and Palmer finally delivered the cattle to the plaintiff company to apply in payment of his indebtedness to it. The plaintiff had the cattle in the pens for shipping when defendant, Young, cut out these particular 28 head of steers and took possession of them. It appears that in 1918 defendant Young sold to L. S. Palmer his 1918 crop of calves. The cattle were delivered at different times during the year. The first two deliveries were of the "tops," which meant the long-age, largest, and best calves of the bunch. Palmer paid for these two first deliveries, and all of the steer calves of these two deliveries except 32 head the best of these tops were shipped out. Young's brand was + on left thigh, and all the calves delivered had this brand on them. Palmer's brand was X, and he branded the 32 head of calves just mentioned with this X-bar brand. and they were included in the mortgage to plaintiff company. dated October 18, 1918. The later deliveries of the cattle were not paid for, and Palmer by two mortgages dated November 12, 1918, and December 16, 1918, mortgaged the cattle of these deliveries back to Young to secure payment of the purchase price. These mortgages included 200 head of steers and heifer calves branded + on left thigh. It was agreed that Palmer was not to put his X-bar brand on these cattle until the indebtedness to Young had been paid. Several witnesses examined the 28 head of cattle taken by Young, as above stated, and their testimony does not entirely agree as to the number of cattle in the different brands. The defendant, Young, testified:

"After I got the cattle out to my place and after they had shed-off we examined them and got the brands, and found that there were 7 head of cross cattle—my brand, without the X-bar being on them; that is 7 head that did not have Palmer's brand on them, and 19 head that had the X-bar and my brand on them, and then there were 3 head that had the X-bar, without my brand, of which 3 cattle I did not claim."

In this connection it may be stated that the evidence shows that another steer was taken from Palmer's herd after the 28 head were taken, and this fact accounts for the testimony in the record as to 29 head. All of the witnesses agreed that 5 of the steers had only Young's cross brand on them, and plaintiff finally made no claim to these 5 head. Young claimed that there were 2 head in addition, known as the West cattle, which had his cross brand on them, as well as Mrs. West's cross bar on the side, and which did not have the X-bar on them. The real controversy in the case was over the 19 or 20 head of cattle that had both X-bar and the cross brands on them. Plaintiff offered testimony that tended to show that these were a part of the 32 top calves delivered to Palmer by Young in 1918 and branded X-bar at that time. Some of the witnesses claimed to have identified 2 or 3 of the steers by flesh marks, as being out of the 32 head of the first delivery. Defendant offered testimony which tended to show that the steers having both the X-bar and cross brands on them were a part of the calves of the later deliveries to Palmer and covered by Palmer's mortgage to defendant, and that the X-bar brand was placed on them at some subsequent date without Young's knowledge or consent.

We quote the first four special issues submitted to the jury, the charge of the court in connection therewith, and the answers of the jury thereto, as follows:

"Q. No. 1: How many of the cattle branded X-bar on left shoulder, regardless of other brands they may have had on them, did defendant Young take from the possession of the plaintiff on April 22, 1921? State the number. Answer: Twenty-two.

"Q. No. 2: How many of the cattle branded X-bar on left shoulder and cross on left hip did defendant Young take from the possession of plaintiff on April 22, 1921? State the number. Answer: Nineteen.

"Q. No. 3: Were any of the cattle that defendant Young took from the possession of plaintiff on 22d day of April, 1921, branded X-bar on left shoulder on the 23d day of October, 1918? Answer Yes or No. Answer: Yes.

"Q. No. 4: If you answer Yes to question No. 3, then state how many. Answer: Two.

"As to the foregoing questions, the burden

of proof is upon plaintiff to establish the same by preponderance of the testimony."

The court also submitted issues which required the jury to find how many of the cattle taken by defendant, Young, were included within the original mortgages from Palmer to Young, dated November 12, 1918, and December, 16, 1918, to which inquiry the jury answered, "Seventeen." The burden of proof as to this issue was placed on the defendant. The court also submitted an issue as to the value of the cattle. Judgment was rendered for the plaintiff for the recovery of the value of 5 head of cattle.

The first two propositions are based on assignments complaining that it was error for the court to place the burden of proof on plaintiff as to the first and third issues. The reason advanced in support of this contention is that plaintiff's possession of the cattle made a prima facie case which cast the burden of proof upon the defendant as to these issues. In a suit for conversion, the burden of proof is upon the plaintiff to establish the material allegations on which his right to recover is based, in this case ownership and right of possession of the property in controversy. 38 Cyc. 2078; 26 R. C. L. p. 1147, § 62. Under some circumstances the plaintiff makes a prima facie case by showing his own possession and a taking by the defendant. First National Bank v. Brown, 85 Tex. 80, 23 S. W. 862, 38 Cyc. 2046. But in such event the prima facie showing may be rebutted. The making of a prima facie case does not, as a general rule, shift the burden of proof    Clark v. Hiles, 67 Tex. 141, 2 S. W. 359, 360; St. Louis Southwestern Ry. Co. v. Parks, 97 Tex. 131, 76 S. W. 741.

[1] The plaintiff in this case did not rest on proof of possession, but in opening offered evidence as to the right on which its claim was based; but we may, for the purpose of this discussion, assume that it made a prima facie case by showing the taking by defendant, Young, of the cattle from its possession. The defendant offered evidence which made an issue as to plaintiff's ownership. Each party offered evidence as to the facts on which their respective claims to the cattle were based, and definite issues of fact as to ownership were thus formed. If the case had been submitted on a general charge, it would have been improper for the court to have charged that the burden was on the defendant to negative the fact of plaintiff's ownership of the cattle. Clark v. Hiles, 67 Tex. 141, 2 S. W. 359; St. Louis Southwestern Ry. Co. v. Parks, 97 Tex. 131, 76 S. W. 741, 38 Cyc. 2078. The special issues referred to present questions as to the facts relied on by the plaintiff to show its ownership, and we think the burden of proof as to these facts was on the plaintiff. The case of Clark v. Hiles, supra, illustrates and sustains this

conclusion. That case was an action of trespass to try title. The plaintiff claimed the land "by virtue of a location upon it of an unlocated balance of the Calder bounty warrant." The plea of not guilty cast upon plaintiff the burden of showing that the land on which the bounty warrant was located was vacant. It was held that proof of a regular location of the bounty warrant on the land in question and a regular survey made for the plaintiff a prima facie case. But the defendant offered evidence tending to show that the land was covered by a previous location and survey, the Ponce de Leon grant. The plaintiff in turn offered evidence to show that the land was not within the boundaries of the Ponce de Leon grant. The court charged the jury:

"That the burden of proof was upon the plaintiff, and that if they believed from the evidence that the land in controversy was not within the limits of the De Leon grant they would find for the plaintiff," etc.

The court, in discussing the propriety of this charge, said:

"The whole question turns upon whether or not the burden of proving the land vacant, and without the Ponce de Leon lines, which originally rested with the plaintiff, was shifted to the defendants when plaintiff had made out a prima facie case upon the question."

The authorities are reviewed on the subject, and these conclusions stated by the court:

"The general rule is that the burden of proof remains on a party affirming a fact in support of his case, and does not change in any aspect of the cause, though the weight of evidence may shift from side to side, according to the nature and strength of the proof offered in support or denial of the main fact to be established. * * * That a party does not shift to his adversary the burden of proof by making out a prima facie case is clear from what we have said, and is a well-settled principle."

While the case just referred to is not a case of conversion, the principle involved with reference to the effect, on the burden of proof, of a prima facie showing is the same. See, also, Southwestern Ry. Co. v. Parks, 97 Tex. 131, 76 S. W. 741, and Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963.

[2] Under the fourth and ninth propositions it is contended that defendant Young could claim only such cattle as are in the brands described in his mortgages, and that as the undisputed evidence shows that the cattle taken are in different brands, and most of them in brands included within plaintiff's mortgages, he cannot recover. The argument under the assignment urges that, as Young's mortgage did not prescribe any cattle having the X-bar brand on them, he could not hold any cattle having such brand.

Defendant's evidence tended to show that the X-bar brand was put on the 17 head of cattle without his consent, after the cattle were delivered to Palmer and after the execution of his mortgage. If this be true, this subsequent branding of the cattle could not affect the defendant's right under his mortgages.

[3] It is also suggested that the mortgage of November 12, 1918, described the calves mortgaged as being branded X on left hip. Young testified, without objection, that this mortgage by mistake described the brand as X instead of +. In June, 1919, a mortgage describing the brands properly was given in renewal of the old mortgage, and the defendants took possession of the cattle under the terms of the renewal mortgage. The defendant was not suing on the old mortgage, or any mortgage for that matter; it was simply incidental to the establishment of his claim. He could have offered evidence as to the source of his rights without special pleading. Crane v. McGuire (Tex. Civ. App.) 64 S. W. 942; Parlin & Orendorff v. Hanson, 21 Tex. Civ. App. 401, 53 S. W. 62. So we do not think that a failure to plead mistake as a basis for the introduction of the evidence ought to be held to affect the right of the court to submit the question of ownership raised by the evidence.

[4] It is claimed under the sixth and fifteenth propositions that the judgment does not conform to the verdict, in that under the verdict the judgment should have awarded plaintiff recovery for only 2 head of cattle. We think the answers to the special issues sustain the judgment. Plaintiff sued for the conversion of 28 head of X-bar cattle. According to the findings of the jury there were only 22 head with the X-bar on them and subject to plaintiff's claim. Nineteen of these 22 head were branded X-bar and cross, and plaintiff would be entitled to recover for the 3 head that did not have the cross brand on them. The jury further found that 2 of the 19 head that had both cross and X-bar brands were a part of the cattle covered by plaintiff's mortgage, and as a result of these findings plaintiff was entitled to recover for 5 head.

[5] The third, fifth, sixth, seventh, eighth, tenth, and eleventh propositions in various ways question the sufficiency of the evidence to sustain the action of the court in submitting any issue to the jury. As already stated, the controverted issue of fact in the case was whether these cattle which were branded with both cross and X-bar brands were a part of the first delivery of 32 head covered by plaintiff's mortgage, or whether they were a part of the subsequent deliveries, and covered by defendant's mortgages. The defendant, in support of his contention, testified that from his knowledge of the cattle and his experience he could tell that the cattle having the cross and X-bar brands on them were not a part of the "tops" first delivered, which would have been five or six months older than the calves of later deliveries, but were of the tailings of the last deliveries. These cattle, with other cattle belonging to Palmer, were sent to pasture in Oklahoma, in the spring of 1920, and it is shown that at this time a number of the cattle being sent to Oklahoma were freshly branded with the X-bar brand, and there is testimony that several head of cattle belonging to other persons than Palmer had the X-bar brand put on them at this time. One witness also testified that while the cattle were in the pastures in Oklahoma he put the X-bar brand on 4 head of steers in the cross brand, and that he did this under Palmer's instruction. The same witness testified that at this time there were a number of cattle in the herd with fresh X-bar brands on them, though he did not know what the old brands were on these freshly branded cattle. A cattle inspector who saw the cattle in Oklahoma in the spring of 1920 testified that he saw some cross steers with fresh X-bar brands on them. We think this testimony sufficient to authorize the submission of the issues to the jury and to support a finding that the 17 head of steers were a part of the last deliveries of calves in 1918, and were branded with the X-bar brand at some time subsequent to their delivery.

The evidence referred to under the thirteenth and fourteenth propositions was not, in our opinion, admissible. However, we do not see how it could have had any effect upon the finding of the jury on the issues submitted.

The motion for rehearing will be granted, and the judgment affirmed.

KLETT, J., not sitting.