**ANDERSON–DUNHAM, INC., Appellant,**

**v.**

**LEE RUBBER & TIRE CORPORATION, Appellee.**

No. 16321.

Court of Civil Appeals of Texas.

Dallas.

March 27, 1964.

Rehearing Denied April 24, 1964.

Allen, Clements & Kraus, W. R. Allen, Richardson, for appellant.

Scurry, Scurry & Hodges, Richard H. Hodges, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Lee Rubber & Tire Corporation, hereinafter called Lee, sued appellant Anderson-Dunham, Inc., for alleged conversion of a large number of truck tires, on which Lee claims a chattel mortgage lien superior to a chattel mortgage lien claimed by appellant. Seago Contracting Company, mortgagor, hereinafter called Seago, was also made a party defendant, but the cause as to Seago was severed from the cause as to Anderson-Dunham.

After a trial before the court without a jury judgment was rendered for Lee for $9,132.62, the balance due by Seago, to whom the tires had been sold by Lee.

On three different occasions Lee sold tires to Seago: 200 tires on April 4, 1959; 118 tires on August 25, 1959; and 60 tires on October 6, 1959, a total of 378 tires. On each occasion Lee took a chattel mortgage to secure payment and filed its mortgage for registration.

On July 28, 1959 Anderson-Dunham sold Seago 25 dump trailers and the 200 tires with which the trailers were equipped. Anderson-Dunham took a chattel mortgage to secure payment and filed its mortgage for registration. This mortgage provided that it should cover "all attachments, replacements, substitutions and additions" referred to as equipment.

Seago defaulted in its payments due Anderson-Dunham with the result that on or about June 22, 1960 Anderson-Dunham repossessed the trailers together with the 200 tires with which the trailers were then equipped.

Soon after learning of the above repossession Lee informed Anderson-Dunham that the tires were subject to prior mortgages held by Lee and demanded possession of the tires. Anderson-Dunham refused the demand, claiming that its mortgage was superior. On June 29, 1960 this suit was filed.

Lee's first mortgage, that of April 4, 1959, does not state the generic name of property to be covered. It refers to "Branch Invoice #8206." In a space for "Serial Number of Merchandise" there is typed "See 'Schedule A' on reverse side of this contract." On the reverse side is this: "Schedule 'A': 1000.20 12 PLY S.D. HWY —RAYON." Following the above recital is a list of 200 numbers. Nowhere in the mortgage, front or back, is the word "tires" to be found.

Lee's second mortgage, that of August 25, 1959, is similar in general to the first mortgage. It refers to Invoice No. 8206. Nowhere in it is the word "tires" to be found.

Lee's third mortgage, that of October 6, 1959, is similar in general to the other two mortgages, but it differs in one important particular. On its reverse side under the heading "Schedule A" there is the following: "60 –1000 x 20 –12 PR SUPER DELUXE HWY NYLON *TIRES*." (Emphasis ours.)

Certified copies of Lee's three mortgages were filed with the court papers in this cause and are referred to in Lee's First Amended Petition "as though same were fully set forth here."

In its first and second points on appeal appellant says that the trial court erred in overruling its Special Exceptions Nos. 1 and 2, which attack the sufficiency of the description of the mortgaged property in Lee's first and second mortgages.

In its first counter point Lee asserts that (1) the descriptions are sufficient on their face and (2) if they are ambiguous, the record is such as to excite inquiry and it

was the duty of Anderson-Dunham to pursue the inquiry which would have cleared up the ambiguity.

We are of the opinion that appellant's first two points on appeal should be sustained. The descriptions in the mortgages of April 4, 1959 and August 25, 1959 are not in themselves sufficient. It is true that Lee's pleadings are to the effect that the first two mortgages cover tires. But when we examine the mortgages themselves we find that they do not mention the word "tires." It is the mortgages themselves, made part of the pleadings as exhibits by reference, not the allegations in the pleadings, which must control. Pyron v. Grinder, 25 Tex.Supp. 159, 160; Cawley v. Security State Bank & Trust Co., Tex.Civ. App., 126 S.W.2d 715; Paul v. Houston Oil Co., Tex.Civ.App., 211 S.W.2d 345; De-Muth v. Flossie Head (opinion dated March 13, 1964, not yet reported).

We do not agree with Lee's argument that if the mortgages be considered ambiguous, the record is such as to incite an inquiry by Anderson-Dunham which inquiry would have cleared up the ambiguity.

In the first place Lee did not plead any ambiguity, but in its pleading relied on the wording of the mortgages themselves. It did not plead that an inquiry would have disclosed a sufficient description of the property, nor did it, when confronted with appellant's exceptions, ask leave to amend its pleadings. Ross v. Burleson, Tex.Civ. App., 274 S.W.2d 105; Jones v. Dumas Dev. Co., Tex.Civ.App., 229 S.W.2d 936; C. A. Bryant Co. v. Hamlin Ind. School District, Tex.Civ.App., 18 S.W.2d 750; Totten v. Houghton, Tex.Civ.App., 2 S.W. 2d 530; 13 Tex.Jur.2d 648.

In the second place the rule of law on which Lee relies is not applicable here. It is true that, as between a mortgagee and third persons, if a defective description in a chattel mortgage suggests an inquiry which, if pursued, will disclose the property intended to be covered by the mortgage, the description will be adjudged sufficient. But to make the rule applicable it is necessary that (1) the clue to the proper inquiry must be such as is suggested by the mortgage itself, and (2) the inquiry must be directed to others than the parties to the mortgage. Highland Park State Bank et al. v. Continental Nat'l Bank of Ft. Worth, Tex.Civ.App., 300 S.W.2d 304; Walker v. Johnson, 108 Mont. 398, 91 P.2d 406, 124 A.L.R. 937; 12 Tex.Jur.2d 34–37; 14 C. J.S. Chattel Mortgages § 9, p. 600; 10 Am. Jur. 752, and 1963 Cumulative Supp.

Lee's first two mortgages refer to invoices which Lee says would have cleared up any ambiguity as to the property description in the mortgages themselves. However, to have examined the invoices, Anderson-Dunham would have had to make inquiry of one or the other of the parties to the Lee mortgages, and the rule does not require it to do so.

Appellee Lee also says that an examination of the County Clerk's Index of Chattel Mortgages would have disclosed a memorandum made by the clerk describing the property as "tires." But the mortgages themselves do not refer to the index, hence put no one on notice as to what the index contains as to a description of the property. Furthermore, registration of an instrument is constructive notice only of what appears on the instrument itself as registered. Rheem Acceptance Corp. v. Rowe, Tex. Civ.App., 332 S.W.2d 353; Smith v. Shamburger, Tex.Civ.App., 273 S.W. 645; McLouth v. Hurt, 51 Tex. 115; Carter v. Hawkins, 62 Tex. 393; Taylor v. Harrison, 47 Tex. 454. An error of the clerk in compiling the index cannot breathe validity into an instrument which is not valid as constructive notice, nor can an error of the clerk destroy the validity of an instrument which is valid.

Appellant's first two points are sustained.

If we be mistaken in our ruling on appellant's first two points such mistake cannot affect the outcome of this appeal,

for we are convinced that appellant's third point must be sustained; and for that reason, if for no other, the judgment must be reversed. In its third point appellant says that appellee failed to discharge its burden of proof as to the indentity of the tires alleged to have been converted. We agree with appellant.

A statement of Seago's account [1] introduced in evidence by Lee itself shows conclusively that at the time of the alleged conversion the debt on the first 200 tires alleged to have been secured by the mortgage of April 4, 1959 had been paid in full. The statement shows that the total purchase price of these tires was $15,999.92 divided into three monthly payments evidenced by three promissory notes of $5,333.31, $5,333.31 and $5,333.30 respectively. The statement shows two payments of $5,333.31 each prior to the date of the con-

version and a balance due on Seago's account of $5,333.30 as of August 20, 1959. This was prior to the execution by Seago of the second mortgage which was dated August 25, 1959. The statement further shows that on September 18, 1959 Seago made a payment of $5,333.30, the exact amount still due on the third note secured by the mortgage of April 4, 1959. By this time the indebtedness secured by the mortgage of August 25, 1959 had been incurred by Seago, but none of it was yet due. There is nothing in the record to show that either Lee, the creditor, or Seago, the debtor, directed how the payment of September 18, 1959 should be applied. In the absence of any such direction the payment is to be applied to the oldest debt. Wall v. Young, County Lumber Co., Tex.Civ.App., 368 S.W.2d 789, 793; Pyle v. Byrne, Tex.Civ. App., 331 S.W.2d 507, 509; Aetna Casualty

I. The statement is as follows:

Monthly Statement
**LEE RUBBER & TIRE CORPORATION**

Seago Contracting Co., Inc.
Seagoville, Texas

This statement includes transactions to the 27th of each month.
The October statement is extended to October 31.

| REF. NO. | DATE | ITEMS | DUE | CHARGES | CREDITS | BALANCE |
|---|---|---|---|---|---|---|
| JE 502 | MAR. 1959 3/27 | Note Due | 7/10 8/10 9/10 | 5333.31 5333.31 5333.30 | | 15999.92 |
| 135 | July 1959 7/20 | Cash | | | 5333.31 | 10666.61 |
| 150 | August 1959 8/20 | Cash | | | 5333.31 | 5333.30 |
| JE 886 | 8/27 | Note 1 Due Note 2 Due Note 3 Due | 10/10 11/10 12/10 | 3428.74 3428.73 3428.73 | | 15619.50 |
| 164 | Sept. 1959 9/18 | Cash | | | 5333.30 | 10286.20 |
| JE 1031 | Oct. 1959 10/12 | Note 1 Due Note 2 Due Note 3 Due | 1/10/60 2/10/60 3/10/60 | 1868.12 1868.12 1868.12 | | 15890.56 |
| 10 | Nov. 1959 11/24 | Cash | | | 3428.74 | 12461.82 |
| CM 103 | Apr. 1960 4/27 | | | | 3329.20 | 9132.62 |

& Surety Co. v. Haun Lumber Co., 128 Tex. 296, 97 S.W.2d 460 (modified on other grounds 128 Tex. 460, 98 S.W.2d 167); Union Central Life Ins. Co. v. Austin, Tex. Civ.App., 52 S.W.2d 536; Marshall v. G. A. Stowers Furn. Co., Tex.Civ.App., 167 S.W. 230. The last named case seems especially in point here. By such application of the payment of $5,333.30 of September 18, 1959 the entire indebtedness secured by the mortgage of April 4, 1959 on 200 tires was extinguished.

Since the indebtedness was extinguished and the mortgage of April 4, 1959 was thereby discharged, a suit against Anderson-Dunham for conversion could not be maintained by Lee as mortgagee with reference to the 200 tires once subject to the discharged mortgage. Scaling v. First Nat'l Bank, 39 Tex.Civ.App. 154, 87 S.W. 715.

The burden was of course on Lee to prove that Anderson-Dunham converted tires which were still subject to one of Lee's chattel mortgages. Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185; Humphreys-Storts Ins. Agency v. Hoffman, Tex.Civ. App., 254 S.W. 154; Citizens Loan Inv. Co. v. Young, Tex.Civ.App., 247 S.W. 662; Mershon v. Vosley, Tex.Civ.App., 62 S.W. 799; 14 Tex.Jur.2d 67–71. This Lee failed to do. There is no evidence to show that Anderson-Dunham converted to its own use any of the remaining 178 tires which were still subject to Lee's mortgages on the date of the alleged conversion.

Dan Merrill, Branch Manager for Lee, was a witness. About the time of the repossession by Anderson-Dunham Merrill inspected the 25 truck trailers with the 200 tires attached. He had with him a copy of each of the three mortgages. These mortgages included lists of the serial numbers of each of the 378 tires allegedly covered by the three mortgages. We quote from Merrill's testimony:

"Question: Mr. Merrill, I'll show you the conditional sales contract dated April 4, 1959, introduced as Plaintiff's exhibit number 1, with some serial numbers on it, and ask you if that is the list that you are talking about that you had with you?

"Answer: Yes, sir. That's one of the lists. There was three lists involving three contracts on conditional sales. And I had all three of them.

"Question: At that time?

"Answer: I had copies of them.

"Question: All right, I'll ask you to look at the Plaintiff's exhibit number 2, a conditional sales contract dated August 13, 1959—I beg your pardon. August 25, 1959, and with some serial numbers shown on it, and ask you if that is another of the three instruments you had?

"Answer: Yes.

"Question: I'll show you Plaintiff's exhibit number 3, another conditional sales contract, this one dated October 6, 1959, and ask you if that is the third of the three instruments you were referring to?

"Answer: Yes.

"Question: Will you please point out to me which of the serial numbers on those three instruments were the serial numbers you found on those tires that day on that lot?

"Answer: No, I don't believe I would.

"Question: Are you able to?

"Answer: No."

*   *   *   *   *   *

"Question: But you don't know which ones of those serial numbers were on the tires?

"Answer: No, I didn't check every serial number. It would have been impossible.

"Question: Did you check every serial number on every tire?

"Answer: Not at the time I made the visual inspection out at the gravel pit, no.

"Question: How many of them did you verify?

"Answer: I'd say approximately a half a dozen.

"Question: And that's all you verified as to the serial numbers?

"Answer: Right."

Another witness for Lee was Oscar Glenn, President of Seago. He testified as follows:

"Question: Mr. Glenn, when you inspected those trailers and found 198 Lee tires on them, did you take the serial numbers of those tires?

"Answer: No, I did not.

"Question: You don't know them by serial numbers?

"Answer: No, sir.

"Question: And you wouldn't know which particular Lee tires out of your stock were on those trailers?

"Answer: No sir."

From the above testimony it is plain that Lee failed to show that the tires repossessed were subject to Lee's mortgage of August 25, 1959 or October 6, 1959. The tires for all the evidence showed might just as well have been among the first 200 tires covered originally by the mortgage of April 4, 1959 which had been discharged by payment of the indebtedness it secured. Appellant's third point is sustained.

In its fourth point appellant complains that Lee's mortgages of August 25, 1959 and October 6, 1959 were not executed by Seago until several days after the actual sale of the tires. We see no merit in this point and it is overruled.

For reasons given the judgment of the trial court will be reversed and the cause remanded for another trial.

Reversed and remanded.