**FIRST STATE BANK OF EULESS,**
**Appellant,**

**v.**

**Charles A. FAIR, Appellee.**

**No. 17225.**

Court of Civil Appeals of Texas,
Fort Worth.

June 4, 1971.

Lattimore, Campbell, Beadles, Wood & Meier, and Hal M. Lattimore, Fort Worth, for appellant.

Palmer, Palmer & Burke, and Philip I. Palmer, Sr., Dallas, for appellee.

OPINION

MASSEY, Chief Justice.

Suit by plaintiff Charles A. Fair, as same is to be considered for purposes of the appeal, was solely that against the First State Bank of Euless. Its object was to establish the fact that he had a first and prior chattel mortgage lien on certain property of *Rothrock & Moffett, Incorporated,* which had been sold to the general public as part of its merchandise exposed to sale at retail with the proceeds therefrom delivered to the Bank to apply on its mortgage liens; on the theory of trust for an accounting by the Bank as to the total amount received (and applied to indebtedness owing it by Rothrock); and for a personal judgment in such amount on the theory of implied conversion.

Trial began before a jury, but upon conclusion of the evidence the court withdrew the case and rendered judgment as a matter of law for plaintiff, against the Bank for the sum of $8,184.00. Said amount was that indicated by the pleadings on undisputed evidence as the total received by the Bank. The Bank appealed.

Reversed and remanded.

■ We believe and hold that a fact issue was made for jury determination as to the identity and location of the property of Rothrock & Moffett, Incorporated, to which the plaintiff's mortgage had application. A fact issue was likewise made for jury determination relative to the question of whether plaintiff's mortgage lien was arisen and supported pursuant to his advance of "purchase money" enabling and actually used by Rothrock to obtain title to the particular property involved in this suit. Therefore, the trial court erred in finding in the plaintiff's behalf as a matter of law. Furthermore, we believe and hold that the Bank's evidence raised the issue, plead defensively, upon whether its mortgage lien(s) upon the subject property was arisen and supported pursuant to its advance of "purchase money" enabling and

actually used by Rothrock to obtain title to the property involved in the suit. It was entitled to have issue(s) submitted whereby the jury would resolve that question.

At the material time there were two corporations, viz: Rothrock & Moffett, Inc., and Mid-Cities Marine, Inc. It appears that W. E. Rothrock was the president of each of them; indeed it is strongly suggested that each corporation was actually the *alter ego* of Rothrock. It is not clarified in the record whether both corporations' operations were conducted from the same or different premises. It would be a logical conclusion from the evidence that there was only one premises for both corporations, but that fact could not be said to have been established as a matter of law. What was established by undisputed evidence was that all of the business done by the Bank was with Rothrock & Moffett, Inc.

On March 15, 1966, pursuant to negotiations, plaintiff advanced Rothrock $27,500.-00, receiving in exchange a chattel mortgage reflecting promissory note indebtedness in said amount, to become due September 8, 1966. Oddly, the mortgage instrument was drawn so that it read, "KNOW ALL MEN BY THESE PRESENTS THAT Mid-Cities Marine, Inc. of Euless, County of Tarrant, State of Texas, party of the first part, mortgagor, being justly indebted to Charles A. Fair or Edith S. Fair, County of Dallas, State of Texas, party of the second part, mortgagee, in the sum of $27,500.00 * * * (followed by customary language) the following described goods, chattels and personal property, to-wit: A blanket inventory covering boats on premises up to the amount of $27,500.00 but not exceeding said amount, excluding all boats held on consignment basis. (followed by customary language). * * *"

This instrument was signed by "Rothrock & Moffett, Inc. Mid Cities Marine, Inc. By: W. E. Rothrock, President, W.

E. Rothrock, Individually, J. H. Farabee, Individually."

■ The instrument was filed for record March 21, 1966, in the office of the County Clerk of Tarrant County, Texas. The clerk indexed its record of mortgages under the name "Mid-Cities Marine, Inc.". The clerk did not index the same under any other name. The situation resulting was such that an investigator looking only at the index of mortgages would have no notice that such mortgage had been given by Rothrock & Moffett, Inc. and filed for record for the benefit of Charles A. Fair, though the state of the law is such that such plaintiff was protected (by reason of having filed the mortgage for record) to the same extent as would have been the case had the clerk indexed it under the names of all the signers instead of merely in the name of Mid-Cities Marine, Inc. See authorities annotated under 12 Tex. Jur.2d p. 49, "Chattel Mortgages", Sec. 36, "Duty of clerk; Failure to register properly."

■ We therefore view the mortgage instrument as any third party would have been bound to do in a check to see if Rothrock & Moffett, Inc. had already granted a mortgage on property as to which the third party was contemplating acquiring an interest, and just as if the mortgage had been indexed under the name of Rothrock and Moffett, Inc. We note the necessity of an investigation to determine the location of the "premises" mentioned therein. On a trial the meaning thereof within the contemplation of the parties to the mortgage would be proper to be shown by parol evidence, just as was parol evidence held admissible in an analogous situation where the inquiry was upon whether "the mortgagor had just that many (mortgaged number) steers on his home place, and that the steers remained thereon, and that those levied on were a part of the 95 head embraced in the mortgage." Ft. Worth Nat. Bank v. Red River Nat. Bank, 84 Tex. 369, 19 S.W. 517 (1892).

We believe the circumstances were such as bring the instant case within the rule that if a defective description in a chattel mortgage suggests an inquiry which, if pursued, will disclose the property intended to be covered by the mortgage, the description will be adjudged sufficient; *provided*, however, as applied to the instant case, that the plaintiff show by parol evidence that pursuance of the suggested inquiry would have revealed that the "premises" was that where the property indicated to have been theretofore mortgaged to him was actually located, etc. We believe the rule in such cases is well stated in Anderson-Dunham, Inc. v. Lee Rubber & Tire Corp., 378 S.W.2d 99, 102 (Dallas Civ. App.1964, writ ref., n.r.e.).

Not settled by application of law, but raised as a fact issue, merely, was the matter of identity and location of property subject to plaintiff's mortgage of March 15, 1966, at the times subsequent mortgages on Rothrock & Moffett, Inc. properties were taken and recorded by the Bank. It was improper to render judgment on the theory that the issue was resolved by the law.

As applied to the property in question, all merchandise displayed for sale by Rothrock & Moffett, Inc., or its successor, there was evidence which directly and specifically applied to six boats upon which the Bank had individual mortgages dated April 27, 1966, and May 6, 1966. There was direct evidence, albeit from interested parties, to the effect that by use of the Bank's money, actually paid by it to, for, or in behalf of Rothrock & Moffett, Inc., as the advancement of "purchase money", title to these several boats was initially acquired and agreed to be acquired by said mortgagor. Fact question(s) thus raised should have been resolved by the jury. Whether or not the boats were on Rothrock's premises before there was an actual transfer of title into Rothrock & Moffett, Inc., would be immaterial, though proof of such would be properly received as evidentiary matter.

Furthermore, the same thing applies to the affirmative case of the plaintiff. His pleadings alleged and he contends that he proved that his own was a "purchase money" lien as applied to the boats in question; that it was agreed to be and actually was his money by use of which Rothrock and Moffett, Inc., acquired title. Such evidence was presented by way of the plaintiff's own testimony, and the jury would have been entitled to refuse to believe him. His evidence created no more than a fact issue.

The transactions in question were entered into before the effective date of the Uniform Commercial Code, June 30, 1966. Therefore, they were controlled by Vernon's Ann.Tex.St. 4000, "Chattel mortgage", subsequently supplanted by provisions of such Code. By its force mortgages given as of all dates material for consideration would be valid if given to secure the purchase price of items daily exposed to sale in the regular course of its business as part of a mortgagor's stock of goods and wares so exposed.

In view of the necessity of another trial it might be well to express a distinction which might become necessary to be considered. A mortgagee whose recorded mortgage agreement makes provision that the same shall apply to after-acquired goods in addition to existing stock or in substitution for articles sold in the regular course of the mortgagor's business, has so contracted that as of the very moment title to such after-acquired goods vests in the mortgagor a lien interest therein vests in the mortgagee. But this does not mean a different mortgagee may never exist as applied to merchandise that the same mortgagor might acquire for the purpose of exhibiting as part of his daily exposure of wares for sale. It is the title to any such merchandise which is important; and if in order to acquire title to specific articles another mortgagee advances all or a part of the money required for its purchase, with prior agreement by the mortgagor that he will take his title "sub-

ject to" the lien of the mortgagee whose money enables him to obtain such property, the reality of the transaction is that, as applied to all other parties in the world—including prior mortgagees whose lien would attach but for the agreement of the mortgagee with the new mortgagee, such "purchase money" lienor owns the newly acquired property to the extent of the money invested to enable its purchase, with the excess in value, if any, belonging to the mortgagor (and only such excess, if any, as of the time of its acquisition, would be burdened by and subject to the mortgage of the initial mortgagee).

We have not discussed all the points of error presented on appeal. To do so would unnecessarily extend the opinion. We have examined and considered all of them. Under the record presented they do not present reversible error. All points of error other than those necessarily embraced by our discussion of reasons for reversal are overruled.

Judgment is reversed with the cause remanded.